## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ANTONIO KENDRICK (# R-51546)     )
      Plaintiff,              )
                               )     **Case No. 12 C 19**
      v.                )
                               )     **Judge Ronald A. Guzmán**
IMHOTEP CARTER, PARTHASARATHI  )
GHOSH, WEXFORD HEALTH         )
SOURCES, INC., and LOUIS SHICKER,  )
      Defendants.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff Antonio Kendrick, who is in custody at the Stateville Correctional Center, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, contending that defendants Imhotep Carter and Parthasarathi Ghosh (doctors at Stateville) and Louis Shicker (the Agency Medical Director for the Illinois Department of Corrections) acted with deliberate indifference in connection with the medical care Kendrick received for his high cholesterol, degenerative joint disease, and rheumatoid arthritis. Kendrick also contends that Wexford Health Sources, Inc. (an entity that hires medical personnel who provide medical services to Illinois prisoners) has a practice of denying inmates, including himself, necessary medical care.

Dr. Carter, Dr. Ghosh, and Wexford (the "Treating Defendants") filed a joint motion for summary judgment based on Kendrick's alleged failure to exhaust and, alternatively, the merits. Dr. Shicker filed a separate motion for summary judgment. Kendrick's motion to strike portions of the Treating Defendants' amended Local Rule 56.1 statement and supporting materials is also before the Court. For the following reasons, Kendrick's motion to strike and Dr. Shicker's motion for summary judgment are granted. The Treating Defendants' motion for summary judgment is granted in part and denied in part as described below.

## I.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010).  The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter.  The only question is whether there is a genuine issue of fact."  *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted).

## II.    Local Rule 56.1

Each motion for summary judgment was accompanied by a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as required by Local Rule 56.2.  (Dkt. 97, 101.)  The Court also mailed its own notice to Kendrick.  (Dkt. 82.)  The notices explained in detail the requirements of the Local Rules governing summary judgment.  Local Rule 56.1(a) requires the moving party to file, among other things, a memorandum of law, affidavits and evidence supporting his position and a "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law."  Local Rule 56.1(a)(1), (3) (N.D. Ill.).  The statement of material facts must "consist of short numbered paragraphs, including within each paragraph specific references to the affidavits,

parts of the record, and other supporting materials relied upon to support the facts set forth in

that paragraph.  Failure to submit such a statement constitutes grounds for denial of the motion."

Local Rule 56.1(a) (N.D. Ill.).

In response, the party opposing a motion for summary judgment must file his own

memorandum of law, opposing affidavits and evidence, and a response to the movant's statement

of material facts and may file his own statement of additional material facts.  Local Rule 56.1(b)

(N.D. Ill.).  Finally, the movant may file a reply memorandum and, if his opponent filed a

statement of additional material facts, the movant may respond to the material facts.  Local Rule

56.1(a) (N.D. Ill.).

Here, at the reply stage of briefing, the Treating Defendants filed an amended Local Rule

56.1(a) statement, along with four amended supporting declarations.  In an accompanying letter

dated March 11, 2014, which the Clerk is directed to place on the docket, counsel indicated that

he had altered the declarations to correct a "clerical error" and to address factual assertions and

arguments made by Kendrick in response.  Counsel's letter also stated that "[f]or simplicity [sic]

sake, no additional facts were stated in the Amended Rule 56.1 Statement.  The only change

made to the 56.1 Statement was to revise the citations to the Amended Declarations.  Any

reference to the additional facts stated in the Amended Declarations were cited to directly in

Defendants' Reply Brief."  (Defs.' Mar. 11, 2014 Letter.)

Kendrick filed a motion to strike based on Dr. Ghosh and Dr. Carter's reply submissions,

arguing that the amended Rule 56.1(a) statement and the accompanying amended declarations

were substantially different from the original Rule 56.1(a) statement and supporting materials

and that he would be prejudiced if the Court considered the new portions of the amended

statement and amended declarations.[1]  The Court advised Kendrick that it would address his

motion to strike when it ruled on the summary judgment motions.  (Dkt. 124.)  It does so now.

The goal of Local Rule 56.1 is to present information to the Court in an orderly manner

and allow the movant and opponent to respond to evidence presented by the other side.  *See*

*Wilson v. Archer Daniels Midland Co.*, No. 09-CV-4183, 2011 WL 4345710, at *2 (N.D. Ill.

Sept. 13, 2011).  The Court has broad discretion to enforce Local Rule 56.1.  *See Benuzzi v. Bd.*

*of Educ. of City of Chi.*, 647 F.3d 652, 655 (7th Cir. 2011).

Local Rule 56.1 "does not allow the movant to make successive filings of fact to which

the non-movant has no opportunity to respond."  *Premier Capital Mgmt., LLC v. Cohen*, No. 02

C 5368, 2008 WL 4378313, at *2 n.4 (N.D. Ill. Mar. 24, 2008); *see also Developers Sur. and*

*Indem. Co. v. Kipling Homes, L.L.C.*, No. 11 C 4457, 2013 WL 315960, at *3 (N.D. Ill. Jan. 28,

2013) (holding that Local Rule 56.1 "does not permit a moving party to argue facts in reply to

the opposing party's facts or arguments when those facts are not included in the moving party's

Local Rule 56.1(a) Statement").

Instead, the moving party bears "the initial burden of identifying the basis for seeking

summary judgment."  *Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011).  That party is

limited to the grounds he chooses to raise in his opening memorandum and may not expand

those grounds in reply.  *See id.*; *see also Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736

(7th Cir. 2006) ("As a general matter, if the moving party does not raise an issue in support of its

---

[1]  The Court notes that Kendrick's motion to strike contains a detailed comparison of the
differences between the Treating Defendants' original and amended submissions.  (Dkt. 123.)
This motion, as well as his other filings, are thorough, well-written, and demonstrate a
commendable grasp of Local Rule 56.1 and the relevant law.

motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision"); *Schwab v. N. Ill. Med. Ctr.*, No. 12 C 8398, 2014 WL 2111124, at *10 (N.D. Ill. May 20, 2014) (same, collecting cases).

In this case, Dr. Ghosh and Dr. Carter expanded the record at the reply stage by amending their original Rule 56.1(a) statement to cite to amended versions of four supporting declarations. They then used their reply memorandum as a vehicle to make arguments based on the assertions in the amended declarations. By editing their original Rule 56.1(a) submissions as part of their reply, Dr. Ghosh and Dr. Carter prevented Kendrick from responding to their new evidence and arguments based on that evidence. This is clearly prejudicial to Kendrick and violates both the letter and spirit of Local Rule 56.1. *See Developers Sur. and Indem. Co.*, 2013 WL 315960, at *3 (the prohibition against expanding the record in reply is meant to ensure that the party opposing summary judgment has an opportunity to respond to the movant's facts and arguments and, if he can, controvert them); *see also Thomas v. Arrow Fin. Serv., LLC*, No. 05 C 5699, 2006 WL 2438346, at *6 n.1 (N.D. Ill. Aug. 17, 2006) ("It is well-settled that raising an issue for the first time in reply is improper, as it deprives the opposing party of a meaningful chance to respond.").

Thus, Kendrick's motion to strike the newly added portions of the amended Local Rule 56.1(a) statement and the supporting amended declarations is granted. The Court will confine its consideration to arguments and evidence presented in the Treating Defendants' motion for summary judgment, the supporting memorandum, and the original Rule 56.1(a) statement of

facts, and will disregard the amended statement of facts and the portions of the reply that address newly added evidence.

## III.    Facts

The following facts are undisputed unless otherwise noted. Plaintiff Antonio Kendrick is incarcerated at the Stateville Correctional Center. (Defs.' Stmt. Fact, Dkt. 117, ¶1.)[2] Defendant Wexford Health Sources, Inc. ("Wexford") is a corporation that hired medical personnel to provide medical services to inmates at Illinois Department of Corrections ("IDOC") facilities, including Stateville, from March 1, 2005, until July 5, 2005, and from December 17, 2005, until the present. (*Id.* ¶ 2.) From June 18, 2003 until March 31, 2011, Wexford employed defendant Dr. Parthasarathi Ghosh as Stateville's Medical Director. (*Id.* ¶ 3.) From July, 2011 through approximately May, 2012, it employed defendant Dr. Imhotep Carter as Stateville's Medical Director. (*Id.* ¶ 4.) Defendant Louis Shicker was IDOC's Medical Director at all times relevant to this action. (Shicker's Stmt. Fact, Dkt. 103, ¶ 2.)

Kendrick contends that the individual defendants were deliberately indifferent in connection with the treatment he received for a degenerative joint condition in his left knee, rheumatoid arthritis, and high cholesterol. (Defs.' Stmt. Fact, Dkt. 117, ¶ 7.) He also contends

---

[2]  There are two sets of Rule 56.1 submissions since there are two motions for summary judgment. The Court will refer to the facts submitted by the Treating Defendants as "Defs.' Stmt. Fact" and will refer to facts submitted by Dr. Shicker as "Shicker's Stmt. Fact." In addition, Kendrick responded to the Treating Defendants' statement of fact in two parts. Docket 108 (his memorandum in response to the motion for summary judgment) attaches his response to paragraphs 1-80 of the defendants' facts. Docket 114 responds to the remaining facts. The Court will cite to Kendrick's responses as "Pl.'s 1st Resp. Defs.' Stmt. Fact" and "Pl.'s 2d Resp. Defs.' Stmt. Fact."

that Wexford has a policy or practice of denying inmates, including himself, necessary medical care to save money. (*Id.* ¶ 27.)

### A. Exhaustion – Degenerative Joint Disease, Rheumatoid Arthritis, and High Cholesterol

The Court received Kendrick's complaint, which is dated October 25, 2011, on January 3, 2012. (Dkt. 1.) The record contains a grievance marked "emergency" dated January 12, 2013. (Pl.'s 1st Resp. Defs.' Stmt. Fact, Dkt. 108, App. 35.) In that grievance, Kendrick asserts that he did not receive a response to a prior grievance filed in September 2011 about the treatment he received for joint pain and complains about the treatment provided by Dr. Ghosh and Dr. Carter. (*Id.*) IDOC's Administrative Review Board ("ARB") returned the January 2013 "emergency" grievance to Kendrick and advised him that he needed to grieve his issues with his institution before appealing to the ARB. (*Id.* at App. 34.)

The record contains a second grievance dated July 17, 2012, complaining about arthritis and joint pain. (*Id.* at App. 39.) A Grievance Officer denied relief, Kendrick appealed, and on October 31, 2012, the Chief Administrative Officer ("CAO") at Stateville affirmed. (*Id.* at App. 38.) The record shows that Kendrick received the order affirming the denial of relief on November 28, 2012, due to a lock-down. (*Id.*) On December 7, 2012, Kendrick sought further review with the ARB, which dismissed his appeal as untimely, because it had been filed more than thirty days after the CAO's October 31, 2012 decision. (*Id.*) The dismissal order did not reference the fact that Kendrick received the CAO's order on November 28, 2012. (*Id.*) Two other grievances are dated July 17, 2012, and July 24, 2012, and complain about treatment of Kendrick's high cholesterol. (*Id.* at App. 41, 45.)

## B.     Wexford

Kendrick is dissatisfied with the care he received from Wexford staff for his degenerative joint disease (which he alleges causes him to suffer knee pain), joint pain, and rheumatoid arthritis.  (Pl.'s Resp. at 21.)[3]  In a nutshell, the record reflects that the medical staff who treated Kendrick's joint pain deny that Wexford has a widespread practice of denying Kendrick and other inmates medical care to save money.  Wexford staff members represent that medical services are provided according to each inmate's needs, Wexford employs physicians who have the training and expertise required to treat Kendrick appropriately, and Kendrick received all medically necessary care.  (Defs.' Stmt. Fact, Dkt. 117, ¶¶ 81-82, 88, 105, 108.)

Kendrick, on the other hand, contends that if Wexford employed competent personnel, he would not have suffered from what he characterizes as excruciating pain for the past eight years.  (Pl.'s 2d Resp. Defs.' Stmt. Fact, Dkt. 114, ¶ 82.)  He also testified at his deposition that Joe Sheehey (a medical technician at Stateville whose employer was unknown to Kendrick) and unnamed individuals at Stateville told him that Wexford has a practice of denying inmates orthopedic shoes unless they are visibly suffering.  (Kendrick Dep., Dkt. 117-1, pp. 67-72.)

In addition, Kendrick said Dr. Carter told him Wexford would not approve orthopedic shoes such as the supportive New Balance sneakers that Kendrick believed would alleviate his knee pain.  (*Id*. p. 71) ("[Dr. Carter] said, 'Wexford is not going to give them to me.  They're not going to approve that for me.'").  In contrast, Dr. Carter denies telling Kendrick that Wexford

_____

[3] Kendrick's deliberate indifference claim against Wexford is based on its treatment of the conditions that cause him chronic joint pain, not the treatment he received for his high cholesterol.  (Pl.'s Resp. at 21.)

had a practice of denying orthopedic shoes to inmates. (Carter Aff., Dkt. 117-4, ¶ 12.) In Dr.

Carter's opinion, Kendrick did not have a medical need for orthopedic shoes. (*Id*. ¶¶ 12-13.)

Kendrick also testified that he saw other inmates with sports-related knee injuries wait

for up to a year to receive specialty services. (Kendrick Dep., Dkt. 117-1, p. 73.) Although

Kendrick was unfamiliar with the inmates' medical situations, after seeing them on crutches for a

period of time, he concluded that Wexford had a policy of delaying treatment. (*Id*. at 73-74.)

### C. Dr. Shicker

Dr. Shicker is IDOC's Agency Medical Director. (Shicker's Stmt. Fact, Dkt. 103-6,

¶ 58.) He is an administrator. (*Id*. ¶ 59.) His responsibilities include developing statewide

policies for adult and juvenile inmates; supervising and mentoring his direct reports; acting as

the primary liaison between IDOC, Cermak Hospital, the University of Illinois Hospital, and

other private hospitals; assisting the Office of the Attorney General and agency legal staff

regarding health care related matters; formulating and administering fiscal policies and

negotiating with vendors; ensuring that administrate directives comply with state and federal

requirements; and evaluating and reviewing the performance of medical directors and

physicians. (Pl.'s Resp., Dkt. 107-1, Ex A.) Dr. Shicker neither provides direct treatment nor

issues medical permits to inmates. (Shicker's Stmt. Fact, Dkt. 103-6, ¶ 59.) Instead, physicians

or the medical director at each facility are tasked with making decisions about the medical care

provided to inmates. (*Id*.)

On November 11, 2011, Kendrick wrote a letter to Dr. Shicker complaining about Dr.

Carter's treatment of his degenerative joint condition and Dr. Carter's refusal to give him a

permit authorizing the use of ice or a prescription for supportive shoes, such as New Balance

sneakers. (*Id.* Ex. F.) Dr. Shicker responded by sending Kendrick a letter dated December 16, 2011, stating:

> These types of things are best dealt with at the local level. If you are dissatisfied with the services provided, you need to register your complaints through the grievance process. In general, reasonable accommodations, based on clinical need, can be made. I suggest you explore with health care and the Warden the possibility of purchasing the gym shoes through the Commissary – as one might need to do for special size shoes.

*Id.* Kendrick did not send any further letters to Dr. Shicker.

## IV. Analysis

### A. Dr. Ghosh and Dr. Carter

#### 1. Overview of the Exhaustion Requirement

The Prison Litigation Reform Act requires prisoners to exhaust their administrative remedies before they file suit in federal court. 42 U.S.C. § 1997(e)(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Under the Act, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The exhaustion requirement applies to deliberate indifference claims. *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). The defendants bear the burden of proving that a prisoner failed to exhaust administrative remedies for a claim. *Turley v. Rednour*, 729 F.3d 645, 649-50 (7th Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 204-05 (2007)).

To exhaust administrative remedies, a prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). The

exhaustion requirement is designed to give corrections officials an opportunity to address complaints internally before a federal suit is initiated. *See Porter*, 534 U.S. at 524-25. Exhaustion is a precondition to filing a federal lawsuit so a prisoner must exhaust before he commences his federal litigation. Thus, an attempt to exhaust while a lawsuit is pending is insufficient. *See Jones v. Bock*, 549 U.S. 199, 223 (2007). If the inmate fails to exhaust a claim completely before filing suit in federal court, the Court may dismiss that claim. *See Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005). Dismissal for failure to exhaust is without prejudice. *Id.* (collecting cases). This is the case even though exhaustion "most often is raised via summary judgment motion, so that the Court can consider evidence 'outside the pleadings,' such as affidavits, grievances, responses, appeals, and related documentation." *Collier v. Conrad*, No. 13-CV-0870-MJR-SCW, 2014 WL 3057387, at *2 n.1 (S.D. Ill. July 7, 2014) (quoting Fed. R. Civ. P. 12(d)).

### 2.      Kendrick's Efforts to Exhaust

The Court received Kendrick's complaint, which is dated October 25, 2011, on January 3, 2012. (Dkt. 1.) Regardless of whether the October 2011 or January 2012 date is used, the only grievance before these dates is the alleged September 2011 grievance, which is solely about joint pain, not high cholesterol. Moreover, the record establishes that Kendrick did not file a grievance related to his high cholesterol until July 2012, after filing this suit. Thus, Kendrick failed to exhaust his deliberate indifference claim based on the treatment provided for his high cholesterol prior to filing suit.[4] According to Dr. Ghosh and Dr. Carter, as of the time that

---

[4] Under the Illinois Department of Corrections' grievance process, 20 Ill. Admin. Code §§ 504.800 *et seq.*, an inmate must first speak with a counselor about a contested issue, 20 Ill. Admin. Code § 504.810(a). *See Tullis v. Shaw*, No. 14-CV-00070-JPG, 2014 WL 3809497, at

Kendrick filed this case, Kendrick had pursued all required appeals relating to the treatment of his high cholesterol up to the Administrative Review Board, which had not yet ruled. (Defs.' Stmt. Fact, Dkt. 117, ¶ 68.) Nevertheless, because attempts to exhaust while a suit is pending are insufficient, the Court grants Dr. Ghosh and Dr. Carter's motion for summary judgment as to the high cholesterol deliberate indifference claim and dismisses it without prejudice. *See Ford*, 362 F.3d at 398 (holding that the rule that "exhaustion must precede litigation" is routinely enforced "by dismissing a suit that begins too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending").

The alleged September 2011 grievance about joint pain, however, could encompass complaints about the treatment provided for Kendrick's degenerative joint disease and rheumatoid arthritis. A prisoner's "say-so that he had filed a grievance" is sufficient to create a material issue of disputed fact, even if it is not supported by documentation, such as a copy of the grievance. *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). Moreover, the lack of evidence about the purported grievance means that the Court cannot ascertain what issues were allegedly grieved. This leaves the Court with a factual dispute about the existence of the purported September 2011 grievance: Kendrick says he submitted it and Dr. Ghosh and Dr. Carter assert that he did not do so because there is no record of any such grievance. This situation is "[a] swearing contest" that "requires an evidentiary hearing to resolve." *Id*. Accordingly, based on the present record, the Court cannot determine if Kendrick complied with

---

*3 n.1 (S.D. Ill. Aug. 1, 2014). If the problem remains unresolved, the inmate must file a grievance form with the Grievance Officer. *Id*. The Grievance Officer submits a recommendation to the Chief Administrative Officer. *Id*. (citing 20 Ill. Admin. Code § 504.830(d)). If the inmate is dissatisfied with the Chief Administrative Officer's response, he may appeal to the Administrative Review Board. *Id*. (citing 20 Ill. Admin. Code § 504.850(a)).

the pre-suit exhaustion requirement for his degenerative joint disease and rheumatoid arthritis. *See* 42 U.S.C. § 1997(e)(a).

### 3. Considering the Merits in the Alternative

The Court notes that it may set aside the issue of pre-suit exhaustion and consider the merits of Kendrick's deliberate indifference claims against Dr. Ghosh and Dr. Carter under certain circumstances. *See Fluker v. Cnty. of Kankakee*, 741 F.3d 787, 792-93 (7th Cir. 2013) (although a district court must consider exhaustion before reaching the merits, "nothing . . . prohibits a district court's progression from the PLRA defense to the merits if the situation properly calls for it"). If discovery is closed, a defendant's motion for summary judgment is fully briefed on the merits, and the plaintiff has been afforded a "full and fair opportunity to respond," considerations of judicial economy and finality may militate in favor of reaching the merits in the alternative despite the failure to exhaust. *Id.* This is especially true when it is possible for the plaintiff to file a new suit. *Id.*

While discovery is closed and the defendants' motion for summary judgment is fully briefed and addresses both exhaustion and the merits, the decision by Dr. Ghosh and Dr. Carter to amend their Rule 56.1(a) statement as part of their reply prevented Kendrick from having a "full and fair opportunity to respond" to the defendants' evidence. *See id.* at 793. Similarly, the reply filed by Dr. Carter and Dr. Ghosh contains numerous new arguments that Kendrick could not have anticipated based on these defendants' opening memorandum. For example, in their opening memorandum, Dr. Ghosh and Dr. Carter assert that "there is no record of any grievance related to Plaintiff's alleged joint condition, either at the facility level, or in a ruling issued by the Administrative Review Board." (Dkt. 100, p. 3.) This sweeping statement is incorrect because,

as summarized above, it is undisputed that Kendrick submitted several grievances after he filed this action and pursued appeals after he received adverse rulings. Dr. Ghosh and Dr. Carter provide a detailed discussion of these other grievances in their reply memorandum (Dkt. 116, pp. 2-4) but, as discussed above, the Court will not consider arguments raised for the first time in reply.

Thus, based on the present record, the Court cannot ascertain if Kendrick exhausted his deliberate indifference claims related to his joint disease and arthritis prior to filing this action. It also cannot proceed to the merits of Kendrick's deliberate indifference claims against his treating doctors (Dr. Ghosh and Dr. Carter) because these defendants created a jumbled record where their motion and reply are based on different Rule 56.1(a) statements and Kendrick did not have an opportunity to address all of their arguments and evidence. Accordingly, Dr. Ghosh and Dr. Carter's motion for summary judgment is denied with respect to Kendrick's claims related to his joint disease and arthritis.

The Court will refer the exhaustion issue to the magistrate judge for a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), and a report and recommendation as to whether Kendrick's claims related to his joint disease and arthritis against Dr. Ghosh and Dr. Carter were exhausted prior to Kendrick filing suit. In the interests of efficiency, the parties' briefs before the magistrate judge and any hearing shall also address the status of Kendrick's appeal to the ARB of the grievance related to his high cholesterol.

## B.      Wexford

Kendrick argues that Wexford lacks appropriate procedures to treat his joint pain, rheumatoid arthritis, and degenerative joint disease. (Pl.'s Resp. to Defs.' Mot. at 21.) In

support, he reasons that the chronic pain he has suffered over the past eight years demonstrates that Wexford has a policy and practice of providing substandard care. (*Id*. at 21-23.) In addition, as noted above, Kendrick and Dr. Carter disagree as to whether Dr. Carter told Kendrick that Wexford generally refuses to approve orthopedic shoes and Kendrick testified that unknown individuals at Stateville told him that Wexford has a practice of denying inmates orthopedic shoes unless they are visibly suffering. Finally, Kendrick believes that Wexford had a policy of delaying treatment to inmates because he has seen other inmates use crutches for sports-related knee injuries and wait for up to a year to receive specialty services. He thus concludes that Wexford was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

Wexford cannot be found liable based on the actions of staff it employs, as "[r]espondeat superior liability [which makes employers liable for the actions of their employees that are within the scope of their employment] does not apply to private corporations under § 1983." *Shields v. Ill. Dep't. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Instead, a plaintiff can establish that Wexford is liable under § 1983 by offering "evidence that his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Id*. at 796.

A series of poor treatment decisions, however, for a single person are generally insufficient to show that Wexford had an unconstitutional policy or practice. For example, in *Shields*, a recent Seventh Circuit decision about policy and practice claims against Wexford, the plaintiff was a prisoner who injured his shoulder while he was incarcerated. *Id*. at 787. After seeing several doctors, due to an error referring the plaintiff to a specialist, the plaintiff saw a

15

doctor who did not specialize in shoulder injuries and who recommended physical therapy. *Id*.

at 787-88. Due to further errors, staff did not immediately realize that the plaintiff had not been

seen by a specialist. *Id*. at 788. Ultimately, physical therapy was unsuccessful and by the time

the plaintiff saw a specialist, it was too late to perform surgery. *Id*. The plaintiff suffered

permanent damage to his shoulder that could have been avoided. *Id*.

The plaintiff in *Shields* attempted to prove that Wexford had a custom or practice of

deliberate indifference existed based on the series of treatment errors that resulted in his

unnecessarily permanent shoulder problem. *Id*. at 796. The Seventh Circuit affirmed the grant

of summary judgment in Wexford's favor, explaining:

> If the *Monell* policy/custom standard did not apply here, we would
> reverse the district court's grant of summary judgment for
> Wexford. [The plaintiff] has offered evidence showing that the
> corporation was responsible for his health care. As an entity, the
> company knew of his injury, its severity, the need for surgery, and
> the complete failure of physical therapy . . . . Wexford nevertheless
> failed to ensure that [the plaintiff] received the surgery he needed
> to avoid permanent impairment of his shoulder. These facts would
> support respondeat superior liability for Wexford and would lead
> us to reverse summary judgment for Wexford on that ground.

*Id*. at 795. It then concluded that the series of treatment errors were "isolated incidents" that did

"not add up to a pattern of behavior that would support an inference of a custom or policy, as

required to find that Wexford as an institution/corporation was deliberately indifferent to [the

plaintiff's] needs." *Id*.

Here, even if the Court accepts that Kendrick received suboptimal care (an issue which

the Court expressly declines to reach), he still cannot prevail on his § 1983 claim against

Wexford. In this case, the treatment decisions made by Wexford employees and the fact that

Kendrick did not receive orthopedic footwear are insufficient to establish that Wexford has a

custom or practice of deliberate indifference to prisoners' serious medical needs.  As an initial

matter, Kendrick's claim is based on his personal belief that he could and should have received

additional treatment, such as a prescription for New Balance sneakers.  A prisoner, however,

cannot establish a violation of the Eighth Amendment – let alone an institutional policy or

practice – based on his conviction that he is "sure . . . physicians could do better" regarding his

care.  *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013).

Nor do Joe Sheehey's alleged statement to Kendrick that Wexford has a policy of

refusing to approve orthopedic shoes for inmates or the alleged statements by unnamed

individuals at Stateville that Wexford has a practice of denying inmates orthopedic shoes unless

they are visibly suffering alter the Court's conclusion.  The Court may only consider admissible

evidence in opposition to a motion for summary judgment.  *See, e.g., Smiley v. Columbia Coll.

Chi.*, 714 F.3d 998, 1005 (7th Cir. 2013).  Kendrick seeks to introduce these statements "to prove

the truth of the matter asserted in the statement" and no evidence in the record indicates that

Sheehy or the unnamed speakers were Wexford employees whose otherwise inadmissible

statements would be admissible as a statement of an opposing party.  Fed. R. Evid. 801(c)(2) &

(d)(2).  Thus, the Court will not consider the alleged statements made by Sheehey and the

unknown individuals about orthopedic shoes.

Kendrick also stresses that Dr. Carter told him that Wexford would not approve a request

for orthopedic shoes.  (Kendrick Dep, Dkt. 117-1, p. 71) ("[Dr. Carter] said, 'Wexford is not

going to give them to me.  They're not going to approve that for me'").  This alleged statement is

admissible because Dr. Carter was employed by Wexford.  *See* Fed. R. Evid. 801(d)(2).

Kendrick withdrew his claim that Wexford had a policy of denying medically necessary items to

inmates in order to reduce costs, so the Court does not consider that assertion. (Pl.'s Resp., Dkt. 108, p. 23.) The Court assumes that Kendrick is offering this statement to show that Wexford generally refuses requests for orthopedic footwear, since Dr. Carter concluded that orthopedic shoes were not medically indicated for Kendrick..

An unconstitutional policy or custom can take three forms: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Teesdale v. City of Chi.*, 690 F.3d 829, 834 (7th Cir. 2012) (internal quotation marks and citation omitted). To the extent that Kendrick is attempting to prove the existence of an express policy via Dr. Carter's alleged statement about orthopedic shoes, a general statement that does not identify the relevant policymaker is insufficient. *See Chortek v. City of Milwaukee*, 356 F.3d 740, 748-50 (7th Cir. 2004) (holding that "[o]nly those individuals with the requisite policymaking authority are capable of establishing 'official policy' as required by *Monell*," and without involvement of a policymaker, there can be no official policy) (citation omitted). Nor do Kendrick's observations about the length of time he has observed other inmates using crutches for sports-related knee injuries establish a "widespread practice" that is so "permanent and well-settled that it constitutes a custom or practice" as they are too speculative to withstand summary judgment. *See Hoosier v. Greenwood Hospitality Mgmt. LLC*, No. 11 C 3816, 2014 WL 1245112, at *6 n.1 (N.D. Ill. Mar. 26, 2014) (holding that a plaintiff's conjectures cannot create a material issue of disputed fact). For all of these reasons, Wexford's motion for summary judgment is granted.

## C.     Dr. Shicker

Correctional officials may not act with deliberate indifference to an inmate's serious medical needs.  *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).  Deliberate indifference has an objective and a subjective element:  the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A medical need is objectively serious when "the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention."  *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)).

With respect to the subjective component of the deliberate indifference test, a plaintiff must allege that the defendant in question was aware of and consciously disregarded his medical need.  *See Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04.  "This subjective standard requires more than negligence and it approaches intentional wrongdoing."  *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).  To satisfy it, the plaintiff must show that the officials are "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference."  *Farmer*, 511 U.S. at 837.

"Dr. Shicker, the head of the prison system's medical hierarchy, . . . cannot be vicariously liable" for the acts of Wexford doctors.  *Olive v. Wexford Corp.*, 494 Fed. Appx. 671, 673 (7th Cir. 2012).  However, he may be liable if he ignored Kendrick's complaints and

condoned a lack of medically appropriate treatment. *See Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (a supervisory official may be personally liable if he participated in, directed, condoned, or turned a blind eye to the constitutional violation); *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 870 (7th Cir. 2011) (same). He can also be liable for the actions of subordinates if he is aware of a subordinate's unconstitutional actions and fails to prevent a recurrence of those actions. *Backes*, 662 F.3d at 870.

Dr. Shicker did not ignore Kendrick's complaint about Dr. Carter's refusal to provide "gym shoes with extra support, preferably New Balance" and the lack of a daily ice permit. (Shicker's Stmt. Fact, Dkt. 103-6, Ex. F.) Instead, Dr. Shicker wrote Kendrick back and told him, among other things, to file a grievance if he was dissatisfied with the treatment he was receiving. *Id.* As discussed above, the grievance process provides the proper procedural path to protest decisions about the provision of medical care, and Kendrick was required to exhaust his administrative remedies regarding the care for his knee pain before filing a federal lawsuit. Kendrick's letter to Dr. Shicker does not satisfy the exhaustion requirement. *See Myers v. McAuley*, No. 02 C 1590, 2002 WL 31006131, at *3 (N.D. Ill. Sept. 5, 2002) ("Informal letters do not satisfy the administrative exhaustion requirement; furthermore, an inmate must appeal any adverse decisions prior to initiating suit"). The failure to exhaust dooms Kendrick's present claims against Dr. Shicker, whose motion for summary judgment is granted.

## V.      Conclusion

The Clerk is directed to place the letter dated March 11, 2014, from counsel for Dr. Ghosh, Dr. Carter, and Wexford to the Court on the docket. For the reasons stated above, Kendrick's motion to strike [123] and Dr. Shicker's motion for summary judgment [96] are

granted.  The claim against Dr. Shicker is dismissed without prejudice for failure to exhaust.

The motion for summary judgment filed by Dr. Ghosh, Dr. Carter, and Wexford [98] is granted in part and denied in part.  Specifically, summary judgment is granted as to the claims against Wexford and the deliberate indifference claim regarding high cholesterol against Dr. Ghosh and Dr. Carter, the latter claim being dismissed without prejudice for failure to exhaust.  Summary judgment is denied with respect to the deliberate indifference claim against Dr. Ghosh and Dr. Carter related to joint disease and arthritis.  The case will be referred to the magistrate judge for a *Pavey* hearing and a report and recommendation on the exhaustion issue.

**Date**: September 8, 2014

_____
**Ronald A. Guzmán**
**United States District Judge**